THE GENESEE VALLEY NATIONAL BANK *vs.* THE BOARD OF SUPERVISORS OF LIVINGSTON COUNTY.

No action will lie to recover of a county, or of a municipal corporation, money collected or received upon or for a tax based upon an erroneous assessment.

If the assessors have acquired no jurisdiction, of the person, the case of *Mygatt* v. *The Supervisors of Chenango*, (11 *N. Y. Rep.* 563,) still gives an action against them; but, when they have such jurisdiction, no suit can be maintained against any person for the imposition or collection of a tax erroneously imposed.

Where assessors, having jurisdiction of a bank, and of the subject matter, the description, amount and value of its property liable to taxation, assess such bank at the full amount of its capital, they, in so doing, act within their jurisdiction, and if they err, the error is a judicial one, which can be reviewed upon certiorari, but clearly cannot be reviewed in a collateral suit or proceeding.

ACTION to recover from the county of Livingston a portion of two several taxes paid by the plaintiff to the collector of the town of Geneseo, which taxes were based upon the annual assessment of said town, for the year 1864, duly made and returned to the board of supervisors. The action was tried at the Livingston circuit in November, 1867, before a justice of this court, without a jury, who found as facts:

That the plaintiff is a banking association and corporation, organized and existing under and by virtue of the provisions of an act of congress of the United States, entitled "An act to provide a national currency, secured by a pledge of United States stock, and to provide for the circulation and redemption thereof," approved June, 1864, and is located and doing business as such at the village of Geneseo, in the county of Livingston and state of New York, and has been such banking association and corporation since about the 14th day of March, 1865, and is the successor of, and has succeeded to all the property and rights in action of the Genesee Valley Bank, which, prior to the said 14th day of March was, and since the year 1851 had been a banking association and corporation,

organized and existing under and by virtue of the public laws of the state of New York, which authorized the business of banking, and was located and did business at the said village of Geneseo. That the said plaintiff became such successor of the Genesee Valley Bank under and in pursuance of an act of the legislature of the state of New York, entitled "An act enabling the banks of this state to become associations for the purpose of banking under the laws of the United States," passed March 9, 1865. That in the month of August, 1864, the capital stock of the said the Genesee Valley Bank was $150,000. That said capital stock consisted of, and was composed in part of United States government bonds and securities deposited by said bank with the superintendent of the banking department at Albany, to the amount and extent of $89,150, which was so much of the capital stock of the said bank. That in said month of August, 1864, the then acting assessors of the town of Geneseo, Livingston county, N. Y. made their annual assessment of persons and corporations liable to be assessed for state, county and town taxes for the state of New York, county of Livingston, town of Geneseo, for the then coming year. That in making said assessment said assessors, against the objection and protest of the said Genesee Valley Bank, assessed the whole amount of the capital stock of said bank, and charged said bank with a valuation of $150,000, the whole of the capital stock, as the sum upon which they claimed the said bank was liable to pay taxes for said state, county and town for the next year ensuing such assessment; that said assessors were duly informed that the said assessment was excessive in that it should have been made for the sum of $60,850 only, but they declined and refused to correct the same, and thereafter returned to the defendant, in the said year, the annual assessment roll of the said town of Geneseo, in which said bank was assessed for its whole capital stock, to wit, in the sum of $150,000,

Genesee Valley National Bank *v.* Supervisors of Livingston County.

That the said defendant, the board of supervisors of Livingston county, at a meeting of said board in the month of November, 1864, directed a levy and assessment of the taxes for state, county and town purposes, to be made upon the taxable property of the town of Geneseo, so returned to said board by said assessors, and in the month of December, 1864, by warrant signed by the several members of the said board of supervisors, attached to the tax roll for the said town of Geneseo, the said defendant required and directed the collector of the town of Geneseo to collect from the Genesee Valley Bank as part of the said taxes of the state, county and town, to be levied and collected upon the taxable inhabitants and property of the said town, the sum of $2727.56—the same being the tax to be levied by said defendant upon said bank, upon the whole amount of its capital stock of $150,000; that said collector, in pursuance of the directions and by virtue of the said warrant and tax roll, proceeded to levy and collect said tax from the said bank, and collected from the said bank in pursuance and by virtue thereof, on the 12th day of January, 1865, including his fees, the sum of $2758.98, and paid the same, less his fees, not exceeding five per cent thereof, into the hands of the county treasurer of the county of Livingston for the use of said county.; that of said sum so collected and paid into the hands of the treasurer by said collector, the sum of $1640.36 was collected and paid as aforesaid as a tax upon the said United States bonds and securities exempt from taxation, and was so levied and collected against the objections and protest of the plaintiff.

That in the month of April, 1865, the said defendant caused another levy of taxes for the said county of Livingston to be made, and caused another tax roll with a warrant signed by the several supervisors of the county of Livingston thereto annexed, for the collection of county

taxes, known as the county bounty tax, to be issued to the collector of the said town of Geneseo, which levy of taxes was based upon the said assessment so made by the assessors of the said town, in and by which tax roll and warrant the said collector was required to collect from said the Genesee Valley Bank $1763.75, with his fees; that by the direction of the said warrant and tax roll so issued, the said collector of the town of Geneseo proceeded to levy and collect from the said Genesee Valley Bank, and from the said plaintiff as the successor of the said Genesee Valley Bank, in satisfaction of the said tax roll and warrant, the sum of $1377.42 on the 30th day of June, 1865; that said tax was levied upon the whole capital stock of the said Genesee Valley Bank and that the sum of $820.18 thereof was levied and collected as a tax upon the said United States bonds and securities exempt from taxation, and was levied and collected against the objections and protest of the plaintiff, and that the same was paid by the said collector into the hands of the treasurer of the county of Livingston to the use of the said county. That said defendant has been requested and has refused, before suit, to refund to the plaintiff the said several sums, to wit, the sum of $1640.36, so collected on the 12th day of January, 1865, and the sum of $820.18 so collected on the 30th day of June, 1865.

The judge found, as conclusions of law: That said several sums of $1640.36 and of $820.18 were an illegal and excessive levy and collection of taxes, and were levied, collected and paid to the said treasurer of the county of Livingston, without authority of law in the premises, and that the said county of Livingston had and received the same to the use of the plaintiff, and that the plaintiff was entitled to recover against the defendant the said sum of $1640.36, and interest thereon from the 12th day of January, 1865, and the further sum of $820.18, and interest thereon from the 30th day of June, 1865, making the sum of

Genesee Valley National Bank *v.* Supervisors of Livingston County.

$2916.91 at the date of the report, for which said sum of $2916.91, judgment was ordered to be entered in favor of the plaintiff, and against the defendant, besides the costs of this action.

From the judgment so entered, the defendant appealed.

*J. B. Adams,* for the appellants. I. The action for money had and received upon an implied contract cannot be sustained in this case. 1. Because it is brought for the purpose of trying the title or validity of a tax, and that form of action was not intended, and has never been sanctioned in this state for such a purpose. (*Swift* v. *City of Poughkeepsie,* 37 *N. Y. Rep.* 511. *Chegary* v. *The Mayor, &c. of New York,* 13 *id.* 220, *and cases cited,* 223, 224.) The cases cited, in Massachusetts, are peculiar to that state; no objection to the form of action was there taken, and those cases have never been approved by the courts of this state. 2. Because the remedy of the plaintiff was by an application to the assessors for review as provided by statute, or certiorari, or by mandamus, or by trespass against the supervisors who issued the warrant, or against the assessor who commenced the wrong. (13 *N. Y. Rep.* 220, *and cases cited,* 223, 224. 23 *id.* 224, 242.) 3. Because it is an attempt to review and reverse the judgment of the tribunal of assessors in a collateral action, which cannot be done, either directly or indirectly. (*Ontario Bank* v. *Bunnell,* 10 *Wend.* 186. *Livingston* v. *Hollenbeck,* 4 *Barb.* 9.)

II. The plaintiff was a corporation whose place of business was located in Geneseo, within the jurisdiction of the assessors making the assessment, and of the board of supervisors which issued the warrant. The assessors acted judicially in determining the amount for which the plaintiff was liable to be taxed; and every corporation and owner of property within that town was, in law, a party to the proceeding. Their judgment, though erroneous, is conclusive until it is reversed, which can only be done by

certiorari, prohibition, &c.   (*Swift* v. *The City of Pough-keepsie*, 37 *N. Y. Rep.* 511.   *Weaver* v. *Devendorf*, 3 *Denio*, 117.   *The People* v. *Supervisors of Chenango Co.*, 11 *N. Y. Rep.* 563.   *Sandford* v. *The Mayor, &c. of New York*, 33 *Barb.* 148.   *Chegaray* v. *Jenkins*, 1 *Seld.* 381.   *Bell* v. *Pierce*, 48 *Barb.* 51.   *Chagaray* v. *The City of New York*, 19 *N. Y. Rep.* 231.   *Van Rensselaer* v. *Cottrell*, 7 *Barb.* 127.   *Same* v. *Witbeck & Sharp*, 7 *id.* 133.)

III. The taxes in both warrants were paid *voluntarily*, and therefore cannot be recovered back.   1. It is admitted that the first tax was paid within thirty days from the time of the receipt of the tax roll and warrant by the collector. At that time the collector could legally act as a *receiver* of taxes only, and could not make a valid levy. (*Parker* v. *Brown*, 17 *Barb.* 145.)   Payments made within such thirty days are termed "voluntary payments," by 3 *R. S. 5th ed. p.* 918, § 2.   The warrant for the other tax, issued to the collector, April 19, 1865, neither gave nor purported to give to the collector authority compulsorily to collect the tax after the first day of June, 1865, and the demand of the collector at the time the pretended levy was indorsed on the roll by the teller of the bank, was only a demand of voluntary payment, as the officers of the bank being in possession of the tax roll and warrant, had all the means of judging as to the liability of the bank to pay the tax, and the collector's powers, under the warrant, which the collector possessed. (*The New York and Harlem Railroad Co.* v. *Marsh*, 12 *N. Y. Rep.* 308.)   2. " Assumpsit will not lie to recover money which a party has voluntarily paid, or in consequence of an action brought, though the demand was unlawful, and paid with a reservation of the party's rights, for the party should have resisted the payment.   (1 *Esp. Dig.* 119, *and other cases cited in Hall* v. *Shultz*, 4 *John.* 240, *n. a. Clinton* v. *Strong*, 3 *John.* 370, *n. a. Clarke* v. *Dutcher*, 9 *Cowen*, 674.)   3. The protest of the plaintiff does not render the payment any the less voluntary, the payments being both

made when the collector could not make a legal levy, and the plaintiff and officers being possessed of a full knowledge of all the facts and circumstances upon which the taxes were demanded. (*The Rector of Trinity Church* v. *Mayor of New York*, 10 *How.* 138. *Harmony* v. *Bingham*, 12 *N. Y.Rep.* 99 *and* 308. *Commercial Bank of Rochester* v. *City of Rochester*, 42 *Barb.* 488.) In *Fleetwood* v. *The City of New York*, (2 *Sandf.* 481,) which was a case like this, the general term of the Superior Court say : " Where there is *no legal compulsion*, a party yielding to the assertion of an adverse claim, cannot detract from the force of his concession by saying, I object, or I protest, at the same time that he actually pays the claim. The payment nullifies the protest as effectually as it obviates the previous denial and contestation of the claim." 4. The county cannot be held liable for the act of the collector in levying on the plaintiff's property after his warrant had expired. (*Lorillard* v. *The Town of Monroe*, 11 *N. Y. Rep.* 392.)

IV. The receiving of the money by the county treasurer creates no liability in this case to the plaintiff, so long as the plaintiff is not pursuing the specific property taken. (*The People* v. *Supervisors of Chenango County*, 11 *N. Y. Rep.* 563.)

V. Even if the county of Livingston be liable for so much of the tax collected from the plaintiff as was expended for county purposes, it cannot be liable equitably for that portion which was assessed for town charges, as that was never received by the county treasurer, but was paid by the collector to the supervisor and commissioners of highways of Geneseo, by direction of his warrant. As to the portion levied for state purposes, the county treasurer receives that as the agent of the state only, to whom he accounts for the same, being required to execute a bond to the state conditioned for its payment, &c. under chapter 696, Laws of 1866, and is paid by the state for receiving and paying over the state tax. It must, of course, be

presumed that the county treasurer paid over the whole of the state tax before this suit was commenced as he was required by law.

VI. No action can be maintained against the board of supervisors for neglecting or refusing to allow a claim against the county which they had authority to audit and allow: the only remedy in such a case is a mandamus. (*Boyce* v. *Supervisors of Cayuga Co.* 20 *Barb.* 294.)

*A. J. Abbott,* for the respondent. I. The assessors had no jurisdiction to assess that portion of the capital stock of the bank which was invested in United States bonds. These bonds were exempt from taxation, under the constitution of the United States, independent of any express exemption by congress, as the authorities cited below show. They were also expressly exempt under the several acts of congress under which they were issued. They were also exempt under the statute of this state. It was, of course, the duty of the assessors to determine the character of the securities in which the capital stock of the bank was invested. Having determined their character, as they did, and decided that they were United States bonds, they had no jurisdiction over them, and their act in assessing them was unconstitutional and absolutely void. Such act was not simply voidable, but void, as the authorities cited below clearly show, the dictum of Judge Bacon, in 37 *N. Y. Reports,* hereinafter examined, to the contrary notwithstanding. Of course, the subsequent proceedings, based upon such assessment, the levy of the tax by the board of supervisors, &c. were also void. (*Const. of the United States. Laws of Congress exempting the public securities.* 1 *R. S.* 5th ed. 906, § 5, subd. 1. 2 *Black, U. S.* 620. 2 *Wallace U. S.* 200. *Monroe Co. Savings Bank* v. *City of Rochester,* 37 *N. Y. Rep.* 365. *The People, ex. rel. The National Broadway Bank* v. *Hoffman, Mayor, &c.* 37 *N. Y. Rep.* 9, *and the Laws of Congress and cases there cited. The People, ex. rel. Cagger* v. *Dolan,*

36 *id.* 59. *The People, ex rel. Cunningham* v. *Roper et. al.* 35 *id.* 629. *The People, ex rel. Kennedy*.v. *Com. of Taxes, Id.* 423. *The City of Utica* v. *Churchill,* 33 *id.* 161. *Whitney* v. *Thomas,* 23 *id.* 281. *Mygatt* v. *Washburn,* 15 *id.* 316. *The People, ex rel. Mygatt* v. *Supervisors of Chenango Co.,* 11 *id.* 563. *Van Rensselaer* v. *Witbeck,* 7 *id.* 517. *Tallman* v. *White,* 2 *id.* 66.) It is decided, on the doctrine recognized in the above cases, that acts of assessors, or other officers, in cases like the present, are without jurisdiction, unconstitutional and void, and it makes no difference whether the act is regarded as judicial or simply ministerial.

II. The payment by the bank was in no sense voluntary. The payment of the first tax was made under protest by the bank, and a threat to levy by the collector. In the case of the second tax, the collector not only threatened to levy, but did levy, &c. In respect to this last tax, the counsel opposed lays some stress upon the fact that the warrant was returnable 1st June, and the levy made 30th June. But this is of no consequence. The supervisors had spread the tax, issued the warrant for its collection ; the collector at the time claimed the right to levy, did levy, and the money went into the county treasury. (8 *Bosw.* 148.) At the worst, there was a mistake of fact, on the part of the bank officers, as to the time of the return of the warrant, which can make no difference with the right of recovery. The first tax is not affected with this question. The general rule in regard to voluntary payment is, that when payment is made under compulsion, or threat of compulsion, or to procure the release of property wrongfully taken, or to prevent property from being taken, &c. the payment is not voluntary, and the money may be recovered.

III. The act of the assessors, and the proceedings of the supervisors based thereon, being without jurisdiction, unconstitutional, and consequently void, the tax not having

been voluntarily paid, and the money thus obtained having gone into the treasury of the county, and the county having had the benefit of the same, equity and justice demand that the county should refund the money, with the interest thereon. This is the "equitable action for money had and received," and the just and equitable doctrine should prevail here, that, (in the language of the courts,) "the action for money had and received will lie wherever the money sought to be recovered belongs, *ex æquo et bono* to the party seeking the remedy, and will be applied in every case when a person or corporation has received money which in equity and good conscience ought to be refunded to the true owners." (*Hill* v. *Supervisors,* 12 *N. Y. Rep.* 52. *The People, ex rel. Mygatt* v. *Supervisors of Chenango Co.,* 11 *id.* 563. *In this case see 2d and 3d points of Beardsley, and cases cited by him, page* 567, *and points of Hill and cases cited by him, page* 569. *Allen* v. *Mayor,* 4 *E. D. Smith,* 404. 1 *Wait's Practice,* 706, *et seq.* 4 *Pick.* 361. 5 *id.* 498. 11 *id.* 396. 21 *id.* 64 *and* 382. 4 *Metc.* 181. 5 *id.* 73. 1 *id.* 242. 8 *Bosw.* 148. *See also* 16 *Cal. R.* 167; 23 *id.* 111; 48 *Maine R.* 440; 21 *Ill. R.* 605; 25 *id.* 411; 7 *Geo. R.* 64.)

*By the Court,* E. DARWIN SMITH, J. The plaintiffs' bank is located in the town of Geneseo, where it was assessed, and must, for the purposes of taxation, be deemed a resident. The assessors, therefore, had jurisdiction of the person of the plaintiff and of the subject matter, the description, amount and value of their property liable to taxation. In assessing the plaintiff at the full amount of the capital of the bank, they acted within their jurisdiction, and if they erred, the error was a judicial one which could have been reviewed upon certiorari, but clearly cannot be reviewed in a collateral suit or proceeding. The assessors held that the plaintiff was liable to be assessed upon the whole amount of its capital stock. In this they

differed, in opinion, with the Court of Appeals of this state and with the Supreme Court of the United States, in several cases. (*Bank of Commerce* v. *New York City*, 2 *Black.* 620. 2 *Wallace*, 200.) But the assessment was not void because it was erroneous. This question was distinctly decided in *Van Kleeck* v. *Woodruff*, and *Foster* v. *Wanwyck*, (not reported,) as Judge Bacon states in the case of *Swift* v. *The City of Poughkeepsie*, (37 *N. Y. Rep.* 512,) and in *Barhyte* v. *Shepard*, (35 *id.* 238.) I cannot see why the case of *Swift* v. *The City of Poughkeepsie* does not conclusively cover this case. It is true *that* was an action by a stockholder of a bank, who, under the act of 1866, was clearly liable to taxation for the full value of his stock in the bank, and this is an action by the bank for an assessment against the bank. But the opinion of Judge Bacon, which was concurred in by the whole Court of Appeals, in principle, covers both cases, and decides definitively and settles the question conclusively, and, I think, properly, that no action will lie to recover of the county, or of a municipal corporation, money collected or received upon or for a tax based upon an erroneous assessment. If the assessors have acquired no jurisdiction of the person, the case of *The People, ex rel. Mygatt* v. *The Supervisors of Chenango*, (11 *N. Y. Rep.* 563,) still gives an action against them; but, when they have such jurisdiction, this case of *Swift* v. *The City Poughkeepsie* holds that no suit can be maintained against any person for the imposition or collection of a tax erroneously imposed. It is, therefore, our duty to reverse the judgment rendered in this case. Whether the plaintiff has any remedy for the recovery of the money received by the defendants without right and according to what now, in the light of decisions since made, was a clear mistake of law, other than an appeal to the justice of the board of supervisors, is a question we are not called upon to decide.

The *dictum* or suggestion in *The People* v. *Reddy,* (43 *Barb.* 544,) that an action would lie in such a case, was added to a finished opinion at the suggestion of one of my brethren, without due examination, and is doubtless mistaken.

The judgment must be reversed, and a new trial granted.

[MONROE GENERAL TERM, March 1, 1869. *E. Darwin Smith, Johnson* and *J. C. Smith,* Justices.]